UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RHONDA BOGATITUS,

    Plaintiff,

v.

WTS INTERNATIONAL, LLC, A
FOREIGN PROFIT
CORPOARATION;

    Defendant.
_____/

Case No. 2:25-cv-00594-KCD-DNF

## **ORDER**

Before the Court is Defendant WTS International, LLC's motion to dismiss. (Doc. 16.)[1] Plaintiff Rhonda Bogatitus has responded in opposition (Doc. 25), making this matter ripe. For the reasons below, the motion is **GRANTED IN PART AND DENIED IN PART**.

### I. Background[2]

This is an employment discrimination case. At 63 years old and with a mental disability, Bogatitus worked for WTS as a payroll director. (Doc. 14 ¶¶ 11, 24, 34.) She complained of discrimination multiple times and eventually took FMLA leave. (*Id.* ¶¶ 27-28.) While on leave, she was told that her position

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

was being eliminated. (*Id.*) And, two weeks after filing what would become her last complaint, her employment was terminated. (*Id.* ¶ 30.) Despite what WTS said, Bogatitus was actually replaced by a younger and less experienced woman. (*Id.* ¶¶ 14, 23.)

Bogatitus now sues for age discrimination (Count I), retaliation (Count II), and disability discrimination (Count III). (Doc. 14.) According to the complaint, WTS discriminated against Bogatitus by ending her employment, failing to pay her FMLA leave, denying her application for short-term disability benefits, and refusing her a reasonable accommodation. (*Id.* ¶¶ 24, 25-36.) Each claim is addressed in turn below.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v.*

2

*Iqbal*, 556 U.S. 662, 664 (2009). And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Discussion

### A. Count I

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it "unlawful for an employer to … discharge any individual [who is at least 40 years old] because of [their] age." 29 U.S.C. § 623(a)(1). To establish an ADEA claim, Bogatitus must show, through direct or circumstantial evidence, that her age was the "but-for" cause of her termination. *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018). One way to do this is by alleging a prima facie case, which requires facts showing that she (1) was a member of the protected age group (ages 40 to 70), (2) faced an adverse employment action, (3) was qualified for the job, and (4) was replaced by a

significantly younger person. *Adams v. Holland*, 824 F. App'x 982, 984 (11th Cir. 2020).

Bogatitus alleges that she was 63 years old when she was fired from a job she consistently excelled at, had more than 20 years of payroll experience, and was replaced by a significantly younger woman. (Doc. 14 ¶¶ 12, 21, 23.) These facts are sufficient for the Court to reasonably infer discrimination. *See, e.g.*, *McElroy v. Jefferson Cnty. Comm'n*, No. 2:23-CV-00062-ACA, 2024 WL 150501, at *4 (N.D. Ala. Jan. 12, 2024).

WTS argues that the complaint lacks sufficient circumstantial evidence to support the "causal connection" requirement. (Doc. 16 at 7.) Not so. Apart from being replaced by a younger employee, WTS allegedly lied about it. Nothing more is needed at this stage to move the case forward. *See, e.g.*, *Pinkney v. Maverick Condo. Ass'n, Inc.*, No. 6:11-CV-241-ORL-19DA, 2011 WL 2433505, at *2 (M.D. Fla. June 14, 2011) ("The requisite causal connection between age and termination may be sufficiently pled by, inter alia, factual allegations indicating that the plaintiff was replaced by a substantially younger individual[.]"); *Massey v. Servis 1st Bank*, No. 2:25-CV-114-ECM-JTA, 2025 WL 3188402, at *4 (M.D. Ala. Nov. 14, 2025) (denying motion to dismiss

4

ADEA discrimination claim because the plaintiff alleged a prima facie case of age discrimination).

### B. Count II

Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against employees who oppose practices that the statute makes unlawful. 42 U.S.C. § 2000e–3(a). To show actionable retaliation, Bogatitus must claim: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal connection between the two. *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

A protected activity includes "informally voicing [discrimination] complaints to one's superiors." *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1353 (11th Cir. 2025). An adverse action includes termination of employment. *Selby v. Tyco Healthcare Grp., L.P.*, 301 F. App'x 908, 912 (11th Cir. 2008). And, at this stage, a causal connection "is construed broadly enough that a plaintiff need only establish that the protected activity and the [adverse] action are not completely unrelated." *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1353 (11th Cir. 2025). Thus, a "[c]lose temporal proximity between the protected activity and the adverse action may be sufficient to demonstrate that connection." *Id.*

Bogatitus allegedly "submitted multiple complaints to her direct manager, Michelle Schneider, regarding discriminatory and harassing

5

treatment by the Chief Administrative Officer, Lieske." (Doc. 14 ¶ 27.) She also claims that "[h]er final complaint was made via email on January 11, 2024, in which [she] detailed Lieske's unfair treatment and requested support in resolving the situation." (*Id.*) Within "two weeks" of that final complaint, "she was informed by [WTS] representatives … that her position was being eliminated." (*Id.* ¶¶ 28, 30.) These allegations cover all the elements needed.

WTS first argues that Bogatitus "fail[ed] to allege a protected activity with sufficient particularity" because she did not describe the nature of her internal complaints. (Doc. 16 at 8.) According to WTS, Bogatitus "does not allege she complained of any specific unlawful activity, including any related to a protected characteristic." (*Id.* at 10.) This argument fails. The complaint says that Bogatitus submitted multiple complaints to her manager regarding discrimination and harassment. This is a protected activity under Title VII, and no further detail is needed at this point. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002); *Smith v. Baldwin Cnty. Comm'n*, No. CIV.A 09-0616-CG-M, 2010 WL 2200713 (S.D. Ala. Mar. 26, 2010).

WTS also claims that the complaint "does not identify the decision-maker who retaliated or how the retaliation was connected to any protected activity." (Doc. 16 at 10.) But Bogatitus does not need to identify which WTS representative made the decision to terminate her employment at the pleading

6

stage. And being fired two weeks after engaging in a protected activity is a short enough time for the court to infer a causal connection.

## C. Count III

The Americans with Disabilities Act ("ADA") bars employers from discriminating against employees on the basis of their disability. *Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 49 (2025). To state a claim under the ADA, Bogatitus must establish that she (1) has a disability, (2) is qualified for the job with or without reasonable accommodations, and (3) was discriminated against because of her disability. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).

A disability under the ADA is an impairment that "substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(a). The only major life activity Bogatitus identifies here is work. (*See* Doc. 14 ¶ 34.) But to pursue that theory, she must "at a minimum, . . . allege [she is] unable to work in a broad class of jobs." *Mont-Ros v. City of W. Miami*, 111 F. Supp. 2d 1338, 1353 (S.D. Fla. 2000). There are no such facts here. Bogatitus "has failed to allege or demonstrate that [s]he is unable to work in a broad class of jobs." *Id*. Having asserted no other "major life activity," her ADA claim necessarily fails.

The Court also agrees with WTS that Bogatitus had not alleged facts (as opposed to conclusory allegations) supporting the remaining elements. For instance, while Bogatitus claims that WTS failed to provide her a reasonable

7

accommodation, she never alleges she asked for one. Bogatitus also fails to explain how she was qualified for the job given her alleged disability. Boiled down, Bogatitus' ADA claim is simply a recitation of the elements that cannot survive.

## IV. Conclusion

For the reasons above, WTS's Motion to Dismiss (Doc. 16) is **GRANTED IN PART AND DENIED IN PART**. Count III of the complaint is stricken for failure to state a claim. Bogatitus may file an amended complaint within seven days of this order.

**ORDERED** in Fort Myers, Florida on December 16, 2025.

Kyle C. Dudek
United States District Judge